IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY COPLEY, | ) | CASE NO. 1:19-cv-00847 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN DOUGLAS FENDER, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Gregory Copley ("Copley" or "Petitioner") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  His federal habeas petition is deemed filed on April 9, 2019, the date he placed it in the prison mailing system.[1]  Doc. 1, p. 13 (hereinafter referred to as "Petition").  Copley's habeas petition relates to his conviction and sentence rendered in Cuyahoga County Common Pleas Court Case No. CR-16-612252-A, *State of Ohio v. Gregory A. Copley*.  Doc. 1.  Copley pleaded no contest to and was found guilty of aggravated robbery, robbery, kidnapping, attempted safecracking, receiving stolen property, two counts of carrying concealed weapons, improperly handling firearms in a motor vehicle, and having weapons under disability.[2]  Doc. 11-1, p. 22-23.  The trial court sentenced Copley to a total of 13 years in prison. Doc. 11-1, pp. 22-23.

This matter has been referred to the undersigned Magistrate Judge for a Report Recommendation pursuant to Local Rule 72.2.  Respondent has filed an Answer/Return of Writ

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack,* 487 U.S. 266, 273 (1988)).  Copley's Petition was docketed in this Court on April 16, 2019.  Doc. 1.

[2] There were specifications included with most counts.  Doc. 11-1, pp. 4-12, 22-23.

(Doc. 11) and Copley has filed a Traverse (Doc. 12).  For the reasons explained herein, the undersigned recommends that the Court DISMISS and/or DENY Copley's Petition (Doc. 1).

## I. Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

The Eighth District Ohio Court of Appeals summarized the facts underlying Copley's conviction and sentence as s as follows:

> {¶ 3} Copley, Alijah Lee ("Lee"), and Charles Summers ("Summers"), were indicted in connection with the December 5, 2016 armed robbery at Rascal House Pizza in Euclid, Ohio. As is relevant herein, Copley was charged with aggravated robbery, robbery, kidnapping, attempted safecracking, receiving stolen property, two counts of carrying a concealed weapon, improperly handling firearms in a motor vehicle, and having a weapon while under disability. The offenses of violence also contained one-year and three-year firearm specifications and a notice of prior conviction alleging that Copley was convicted of robbery in 2010. The safecracking charge also contained firearm specifications.

> {¶ 4} Counsel was assigned to represent Copley. He obtained discovery and supplemental discovery. Thereafter, on March 21, 2017, Copley pled no contest to the indictment. His trial counsel stated that he had discussed "the facts and circumstances" to Copley and "based upon the State of Ohio's offer here, we have no choice but to enter a no contest plea." The court conducted a Crim.R. 11 colloquy that included the potential sentence for each offense, and also explained that by entering a no contest plea, the court could proceed directly to sentencing. The prosecuting attorney stated as follows on the record:

>> [T]he case essentially involves three codefendants. Mr. Copley and Alijah Lee entered the Rascal House Pizza out in Euclid. They brandished firearms. They came through a side door, brandished firearms. A victim named Dwight Knipe, the manager of the store, was seated in the office. The gun was pointed at him at which point he fell out of his chair. He was basically backed into a corner clearly looking for a means of escape. He did not find a means of escape. This was captured on video. Also Dwight Knipe made statements to the police. He was ordered to open the safe. The safe was on a time

lock, so he was unable to open the safe. He tried to call the owner of the store to get the code for the safe and was unsuccessful in that. Another employee followed the two defendants as they fled to a car driven by Charles Summers. That car then was intercepted by Euclid police. They ended up turning the wrong way down an off ramp onto the Shoreway there where they were apprehended. When the police searched the car, they found the latex gloves, the clothing, the cell phones, and they also found two firearms underneath the front passenger seat.

{¶ 5} Defense counsel explained to the court that Copley was not the "quarterback" of the offense, and that he confessed to police and apologized in a videotaped statement.

{¶ 6} Shortly before sentencing, Copley filed pro se motions to vacate the no contest plea and to disqualify his counsel. During a hearing on these issues, Copley stated that he did not understand that he was pleading to all charges, and believed he faced six-to-nine years imprisonment. At the time of the hearing, defendant's trial counsel was in a domestic relations hearing and he sent another attorney to attend on his behalf. The trial court demanded that the original defense counsel appear for the hearing, and he did so after a brief delay.

{¶ 7} Defense counsel informed the court that the state's pretrial position in the matter was that it would amend the charges only if the defendant agreed to serve fourteen years of imprisonment. Defense counsel stated that, in his opinion, a no contest plea created the possibility of Copley receiving a shorter sentence than that offered by the state. Additionally, defense counsel stated that Copley had confessed and apologized to police, and due to the evidence, which also included identification and "empirical evidence," he believed that it would be "impossible" to obtain a defense verdict. As a result, his "tactic" was to plead no contest.

{¶ 8} The court stated that Copley was advised of the full range of penalties during the plea and was not informed that he faced a maximum of nine years, in light of the numerous charges and specifications. The court merged the convictions on Counts 3 and 4 into Count 1 and imposed a ten year term for the offense, plus a three-year firearm specification, for a total of thirteen years of imprisonment . . .

*State v. Copley*, 2018-Ohio-1506, ¶¶ 3-8, 2018 WL 1882887, * 1-2 (Ohio App. Ct. Apr. 19, 2018);

Doc. 11-1, pp. 101-113.

## II. Procedural Background

### A.  State court conviction

On December 13, 2016, a Cuyahoga County, Ohio grand jury indicted Copley for aggravated robbery (Count 1); robbery (Count 2); kidnapping (Count 3); attempted safecracking (Count 4);[3] receiving stolen property (Count 5); two counts of carrying a concealed weapon (Counts 6 and 7);[4] improperly handing firearms in a motor vehicle (Count 8);[5] and having weapons under disability (Count 9).[6]  Doc. 11-1, pp.  4-13.  On March 21, 2017, with counsel, Copley withdrew his guilty plea and entered a plea of no contest to Counts 1 through 9.[7]  Doc. 11-1, pp. 15-16; Doc. 11-2, pp. 2-21.  A trial court ordered a presentence investigation and report and scheduled sentencing for April 26, 2017.  Doc. 11-1, p. 16.

On April 18, 2017, Copley, acting pro se, filed a motion to withdraw his no contest plea. Doc. 11-1, pp. 17-18.  In his motion to withdraw, Copley argued:

> I was mislead [sic] by my Counsel on the plea bargain which was present to me and I don't fully understand what is going on and what a no contest plea was. After contacting my attorney on 4-13-17 about what I had plead out to and was informed that I plead out to the entire indictment of no contest.  I informed my attorney that I would like to take my no contest plead back was told that I cannot take it back and wanted him to file a motion to that regard and he told that he was overruling me.

---

[3] Counts 1 through 4 included one- and three-year firearm specifications and specifications for forfeiture of a weapon and forfeiture of property.  Doc. 11-1, pp. 4-9.

[4] Count 6 included a forfeiture of a weapon specification.  Doc. 11-1, p. 10.

[5] Count 8 included a forfeiture of a weapon specification.  Doc. 11-1, p. 11.

[6] Count 9 indicated that, on or about February 15, 2011, Copley had been indicted for or convicted of the crime of attempted robbery and Count 9 included a forfeiture of a weapon while under disability specification. Doc. 11-1, p. 12.

[7] The journal entry was journalized on March 28, 2017.  Doc. 11-1, p. 15.

Doc. 11-1, p. 18.  At the same time, Copley filed a motion to disqualify counsel and appoint new counsel, arguing that his counsel was ineffective.  Doc. 11-1, pp. 19-20.

A hearing was held on April 26, 2017, at which time the trial court addressed Copley's request to withdraw his plea.  Doc. 11-1, p. 21; Doc. 11-2, pp. 22-35.  Initially, at the hearing, an attorney other than Copley's court appointed attorney appeared on behalf of Copley because Copley's court appointed attorney was in trial in another court.  Doc. 11-2, p. 25.  Before proceeding further, the trial court ordered the substitute attorney to contact court appointed counsel and direct him to promptly appear at the hearing before her.  Doc. 11-2, pp. 26-27.  At the hearing, Copley indicated his counsel had explained the facts to him and he understood the charges (Doc. 11-2, pp. 24-25, 31-34) but he did not "think the [he] was going to cop out to all of [the charges]" (Doc. 11-2, p. 24) and he thought he "was just copping out to a six to nine year[]" (Doc. 11-2, p. 34).  The trial court denied Copley's request to withdraw his plea (Doc. 11-1, p. 21; Doc. 11-2, p. 34).  The trial court then proceeded to sentencing.[8]  Doc. 11-2, pp. 35-56.

After hearing from Copley and his counsel, the trial court merged Counts 2, 3 and 4 with Count 1 for purposes of sentencing and the State of Ohio elected to proceed with sentencing on Count 1.  Doc, 11-1, pp. 22-23; Doc. 11-2, pp. 54-55.  The trial court sentenced Copley to 10 years on Count 1 and 3 years on the firearm specification, with the 3 year-firearm specification sentence to be served prior to and consecutive to the 10-year sentence on Count 1.[9]  Doc. 11-1, pp 22-23; Doc. 11-2, pp. 54, 56.  On Counts 5 through 8, the trial court sentenced Copley to 17

---

[8] The journal entry denying the motion to withdraw was journalized on May 4, 2017, and the sentencing journal entry was journalized on May 1, 2017.  Doc. 11-1, pp. 21, 22.

[9] A fine was also imposed.  Doc. 11-1, p. 23.

months on each count and, on Count 9, the trial court sentenced Copley to 30 months.[10]  Doc.

11-1, p. 23.  All counts were run concurrent for a total of 13 years in prison.  Doc. 11-1, p. 23.

**B.  Direct appeal**

On June 1, 2017, Copley, acting pro se, filed a notice of appeal of appeal (COA Case No.

105857).  Doc. 11-1, pp. 24-30.  On June 13, 2017, the Eighth District Court of Appeals sua sponte

dismissed Copley's appeal for failure to file a timely notice of appeal.  Doc. 11-1, p. 31.

On July 27, 2017, Copley, acting pro se, filed a notice of appeal (COA Case No. 106053)

(Doc. 11-1, pp. 32-40) along with a motion for delayed appeal (Doc. 11-1, pp. 41-48) and motion

to appoint counsel (Doc. 11-1, p. 49).  On August 3, 2017, the Eighth District Court of Appeals

granted Copley's motion for leave to file a delayed appeal (Doc. 11-1, p. 50) and appointed counsel

for Copley (Doc. 11-1, p. 51).

On October 21, 2017, Copley, through appointed counsel, filed his appellate brief, (Doc.

11-1, pp. 52-69), raising the following three assignments of error:

> 1.  The trial court erred when it did not grant Copley's pre-sentence motion to withdraw his no-contest pleas.
>
> 2.  The trial court erred when it denied Copley's pre-sentence motion to disqualify appointed counsel.
>
> 3.  Copley was denied his right to the effective assistance of counsel as guaranteed to him by the Sixth Amendment to U.S. Constitution, and Article 1, Section 10 of the Ohio Constitution.

Doc. 11-2, pp. 54, 62-68.  On December 15, 2017, the State filed its appellate brief (Doc. 11-1,

pp. 70-85) and an amended brief (Doc. 11-1, pp. 86-100).  On April 19, 2018, the court of

appeals affirmed the trial court's judgment.  Doc. 11-1, pp. 101-113; *Copley*, 2018 WL 1882887.

---

[10] Fines were also imposed.  Doc. 11-1, p. 23.

On May 17, 2018, Copley, acting pro se, filed a notice of appeal with the Supreme Court of Ohio (Doc. 11-1, pp. 114- 115) and a memorandum in support of jurisdiction (Doc. 11-1, pp. 116-146).  In his memorandum in support of jurisdiction, Copley raised the following three propositions of law:

1.  The trial court erred when it did not grant Appellant's pre-sentence motion to withdraw his no-contest pleas.

2.  The trial court erred when it denied Copley's pre-sentence motion to disqualify appointed counsel.

3.  Appellant was denied his right to the effective assistance of counsel as guaranteed to him by the Sixth Amendment to U.S. Constitution, and Article 1, Section 10 of the Ohio Constitution.

Doc. 11-1, pp. 117, 122-132.  The State filed a waiver of memorandum in response.  Doc. 11-1, p. 147.  On July 5, 2018, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. 11-1, p. 148.

**C.  Federal habeas corpus petition**

Copley raises the following four grounds for relief in his Petition:

**GROUND ONE (supporting facts)**:  The trial court erred when it denied my pre-sentence motion to withdraw my no-contest plea.  I made it profoundly clear that I did not want to proceed with my no-contest plea.  I formally moved to withdraw that plea and the trial court denied that motion without cause.

**GROUND TWO (supporting facts)**:  The trial court erred when it denied my motion to disqualify appointed counsel.

**GROUND THREE (supporting facts)**:  I was denied my right to effective assistance of counsel as guaranteed to me by the United States Constitution.  That denial prevented me from having a fair due process and proper legal representation.

**GROUND FOUR (supporting facts)**:  I am being held in a state prison after being convicted of felony offenses only after I was denied effective assistance of counsel and the right to due process.

Doc. 1, pp. 5-10.

### III. Law & Analysis

#### A.       Standard of review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No.

104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the

AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling

AEDPA provision states:

> (d) An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim-
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in
> > the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or decides a case differently than the Supreme Court has on a set of materially indistinguishable

facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application'

of clearly established federal law when 'the state court identifies the correct governing legal

principle from the Supreme Court's decisions but unreasonably applies that principle to the facts

of the prisoner's case.'"  *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable

application' clause requires the state court decision to be more than incorrect or erroneous."

*Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable."  *Id.*

"A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by "clear and convincing evidence" and do not have support in the record."  *Matthews v. Ishee*, 486 F.3d 883, 889 (6 th Cir. 2007) (citing 28 U.S.C. § 2254(d) and § 2254(e)(1)).  "The presumption of correctness also applies to factual findings made by a state appellate court based on the trial record."  *Matthews*, 486 F.3d at 889 (citing *Sumner v. Mata,* 449 U.S. 539, 546-47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981)).

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**B.**      **Exhaustion and procedural default**

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.[11]  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).   Further, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Additionally, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th

---

[11] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.  *McMeans,* 228 F.3d at 681.

Cir. 2006). "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies where state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."[12] *Id.* Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of appeals constituted a waiver). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is

---

[12] In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

procedurally defaulted." *Williams*, 460 F.3d at 806.  While the exhaustion requirement is

technically satisfied because there are no longer any state remedies available to the petitioner,

see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal

claims considered in the state courts constitutes a procedural default of those claims that bars

federal court review.  *Williams,* 460 F.3d at 806.

   To overcome a procedural bar, a petitioner must show cause for the default and actual

prejudice that resulted from the alleged violation of federal law or that there will be a

fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

"'[C]ause' under the cause and prejudice test must be something external to the petitioner,

something that cannot be fairly attributed to him."  *Id.* at 753.  "[T]he existence of cause for a

procedural default must ordinarily turn on whether the prisoner can show that some objective

factor external to the defense impeded counsel's efforts to comply with the State's procedural

rule."  *Id.*  "A fundamental miscarriage of justice results from the conviction of one who is

'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v.*

*Carrier*, 477 U.S. 478, 496 (1986).

### C.  Ground One

   In Ground One, Copley argues that the trial court erred when it denied his motion to

withdraw his no-contest plea.  Doc. 1, p. 5.  He asserts that he made it clear he did not want to

proceed with his no-contest plea; he formally moved to withdraw that plea; and the trial court

denied his motion without cause.  Doc. 1, p. 5.  The Respondent contends that Ground One is not

cognizable on federal habeas review and should be dismissed.  Doc. 11, pp. 12-15.

   "[F]ederal habeas corpus relief does not lie for errors of state law."  *Estelle v. McGuire*,

502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991).  It is not for this Court to review

the state court's interpretation of its own laws.  *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 604, 163 L. Ed. 2d 407 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986) ("A federal court must accept a state court's interpretation of that state's statutes and rules of practice.").  "[T]here is no federal constitutional right to withdraw a guilty plea[]" and "whether a state court grants a motion to withdraw a guilty plea is a matter of state law not cognizable on federal habeas review."  *Cline v. Kelly*, 2010 U.S. Dist. LEXIS 24456, *16 & n. 7 (N.D. Ohio Mar. 16, 2010) (citing *Xie v. Edwards*, 35 F.3d 567 [published in full-text format at 1994 U.S. App. LEXIS 23606], 1994 WL 462143, at *2 (6th Cir. Aug. 25, 1994) (Table) and *United States v. Woods*, 554 F.3d 611, 613 (6th Cir. 2009); *see also Gibson v. Warden, Hocking Corr. Facility*, 2011 U.S. Dist. LEXIS 40160, *14 (S.D. Ohio Feb. 22, 2011), *report and recommendation adopted*, 2011 U.S. Dist. LEXIS 40164 (S.D. Ohio Apr. 13, 2011) ("A state defendant has no federal constitutional right, or absolute right under state law, to withdraw a guilty plea.").

Copley acknowledges that a defendant does not have an absolute right to withdraw a guilty plea prior to sentencing and that the decision to grant or deny such a request is within the discretion of a trial court.  Doc. 12, pp. 4-5.  However, he argues that his counsel was constitutionally ineffective and therefore the trial court should have granted his motion to withdraw.  Doc. 12, pp. 4-8.  Copley's claim that he is entitled to federal habeas relief on the basis that his counsel was constitutionally ineffective is raised in Ground Three and is addressed below.  His claim in Ground One that the trial court erred in denying his motion to withdraw his no-contest plea is premised on alleged violations of state law which are non-cognizable on

federal habeas review.   Also, Copley has failed to show that the alleged error rendered his

proceedings fundamentally unfair so as to raise a federal constitutional claim.  Following a

hearing on Copley's request to withdraw his no-contest plea, the trial court denied the motion.

Doc. 11-2, pp. 34-35.  When Copley challenged that decision on appeal, the court of appeals

found Copley's claim to be without merit, explaining:

> {¶ 21} In his first assigned error, Copley argues that the trial court abused its
> discretion in denying his motion to vacate his no contest plea. He argues that his
> no contest plea subjected him to the possibility of receiving a fifty-year prison
> term, and the court did not give him a fair hearing.

> {¶ 22} In *State v. Peterseim*, 68 Ohio App.2d 211, 214, 428 N.E.2d 863 (8th
> Dist.1980), this court held that a trial court does not abuse its discretion in
> denying a presentence motion to withdraw a plea where the record reflects: (1) the
> defendant is represented by highly competent counsel; (2) the defendant was
> afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea; (3) the
> defendant was given a complete and impartial hearing on the motion to withdraw
> the plea and (4) the trial court gave full and fair consideration to the plea
> withdrawal request. *Id.* at paragraph three of the syllabus.

> {¶ 23} Additional factors also include: (1) whether the motion was made in a
> reasonable time; (2) whether the motion states specific reasons for withdrawal; (3)
> whether the defendant understood the nature of the charges and the possible
> penalties and (4) whether the defendant was perhaps not guilty or had evidence of
> a plausible defense. *State v. Musleh*, 8th Dist. Cuyahoga No. 105305, 2017-Ohio-
> 8166, ¶ 38, citing *State v. Calabrese*, 8th Dist. Cuyahoga No. 104151, 2017-Ohio-
> 7316, ¶ 12, and *State v. Small,* 8th Dist. Cuyahoga No. 104813, 80 N.E.3d 1234,
> 2017-Ohio-110, ¶ 8.

> {¶ 24} In this case, we find no abuse of discretion. The record demonstrates that
> Copley had very competent counsel, and was afforded a full Crim.R. 11 hearing
> before he entered the no contest plea. From the record, it is clear that Copley was
> given thorough information about the charges and penalties, and he stated that he
> understood. He also received a complete and impartial hearing on the motion to
> withdraw the plea, and the trial court gave full and fair consideration to the plea
> withdrawal request. The record also indicates that the case presented many
> challenges from a defense standpoint and that the state's best offer involved more
> prison time than Copley actually received. In our view, the record suggests that
> Copley was fearful about having pled to the entire indictment, and counsel's tactic
> of pleading no contest to the entire indictment, in hopes of obtaining a sentence
> that was more lenient than that offered by the state. Although we can appreciate
> the potential perils of this strategy, it was ultimately successful and was not

14

unreasonable herein. We find no abuse of discretion in connection with the denial of the motion to vacate the plea.

*Copley*, 2018-Ohio-1506, ¶¶ 21-24, 2018 WL 1882887, * 4; Doc. 11-1, pp. 110-111.

The court of appeals' decision makes clear that the proceedings in state court regarding his request to withdraw his plea were not fundamentally unfair.  Moreover, as explained above, "whether a state court grants a motion to withdraw a guilty plea is a matter of state law not cognizable on federal habeas review."  *Cline*, 2010 U.S. Dist. LEXIS 24456, *16.  Thus, Copley's claim in Ground, which is premised on an alleged violation of state law, is not cognizable on federal habeas review.  *Estelle*, 502 U.S. at 68.

For the reasons explained herein, the undersigned recommends that the Court DISMISS Ground One as not cognizable on federal habeas review.

### D.    Ground Two

In Ground Two, Copley argues that the trial court erred when it denied his motion to disqualify appointed counsel.  Doc. 1, p. 6. The Respondent contends that Ground Two is presented under state law and, therefore, is not cognizable on federal habeas review and should be dismissed.  Doc. 11, pp. 15-19.  In response, Copley argues that this Court should conduct a de novo review of the trial court's denial of his motion to disqualify counsel.  Doc. 12, p. 8.

The Sixth Amendment entitles a defendant to effective assistance of counsel.  *Tolliver v. Dallman*, 57 F.3d 1070, *2 (6th Cir. June 16, 1995) (unpublished) (citing *Strickland v. Washington*, 466 U.S. 686 (1984)).  However, "[t]his right has not been extended to allow an indigent defendant the counsel of his choice."  *Tolliver*, 57 F.3d at *2 (citing *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)); *see U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006) (continuing to recognize limitations on the right to counsel of choice, noting that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them").

15

Since "[a]n indigent defendant has no right to have a particular attorney represent him," in order to be entitled to substitution of counsel, a defendant must show good cause for substitution. *Tolliver*, 57 F.3d at * 2.  State and federal courts have recognized that a trial court must make some inquiry into a defendant's complaints where there has been a request for substitution of appointed counsel.  *Id.*  Notwithstanding the need for inquiry into a defendant's complaints, "[t]he Sixth Amendment does not guarantee the defendant a 'meaningful relationship' with his attorney."  *Simmons v. Sheets*, 2011 WL 1043909, * 27 (S.D. Ohio Feb. 23, 2011), *report and recommendation adopted*, 2011 WL 1002734 (S.D. Ohio Mar. 16, 2011).  Thus, "[t]he decision regarding whether to appoint new counsel at a defendant's request is committed to the sound discretion of the court."  *Id.* (citing *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004).

In considering a request for substitution of counsel, a court is to consider: "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense."  *Id.* (citing *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008); *United States v. Henderson*, 626 F.3d 326, 2010 WL 4670503, at *10 (6th Cir. Nov. 19, 2010)).  Further, "[c]onsideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice."  *Simmons*, 2011 WL 1043909, *27; *see also United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996) (same) (citing *United States v. Iles*, 906 F.2d 1122, 1130, n. 8 (6th Cir. 1990)).

In reviewing Copley's claim on direct appeal, the Eight District Court of Appeals held:

{¶ 18} In his second assigned error, Copley complains that the trial court erred in failing to investigate his motion to disqualify his appointed counsel.[1]  In *State v. Corbin*, 8th Dist. Cuyahoga No. 96484, 2011-Ohio-6628, ¶ 19, this court held:

Ordinarily, when an indigent accused moves to disqualify his or her counsel, it is the duty of the trial court to inquire into the complaint and make it a part of the record. *State v. Lozada*, Cuyahoga App. No. 94902, 2011-Ohio-823, citing *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48 ¶ 139. The inquiry need only be brief and minimal. *Id.*

> FN 1 - When a trial court enters judgment without expressly determining a pending motion, the motion is impliedly overruled. *Maust v. Palmer*, 94 Ohio App.3d 764, 769, 641 N.E.2d 818 (10th Dist.1994).

{¶ 19} In this case, the record indicates that Copley filed a pro se motion to disqualify his attorney, and complained that he believed that he would receive six-to-nine years of imprisonment. The court reiterated that all potential penalties were explained to Copley prior to the plea. The record also indicates that Copley acknowledged that no promises were made to him. Defense counsel stated that he believed that the absolute minimum term was six-to-nine years. However, the court reminded the parties that this "is his second robbery."

{¶ 20} From the foregoing, the record demonstrates that the trial court held the requisite inquiry. We find no prejudicial error.

*Copley*, 2018-Ohio-1506, ¶¶ 21-24, 2018 WL 1882887, * 3-4; Doc. 11-1, pp. 109-110.

In his Traverse, Copley's arguments rely on state law decisions and/or are focused on his claim that his counsel provided ineffective assistance.  With respect to his claim that the trial court abused its discretion in denying his motion to disqualify his counsel, Copley has failed to demonstrate that his claim was fairly presented to the state court of appeals as a federal constitutional claim rather than a state law claim and, as explained above, "federal habeas corpus relief does not lie for errors of state law."  *Estelle*, 502 U.S. at 67.  Furthermore, an abuse of discretion does not necessarily result in a violation of a constitutional right. *See e.g.*, *Sinistaj v. Burt*, 66 F.3d 804, 808 (6th Cir. 1994) (discussing whether a finding that a trial court abused its discretion when denying a request to withdraw a jury waiver amounted to federal constitutional violation).  With respect to his claim that his counsel was ineffective, as previously noted, that claim is asserted in Ground Three and addressed below.   Finally, assuming arguendo that Copley fairly presented his Ground Two claim, i.e., that the trial court erred in denying his

motion to disqualify appointed counsel, as a federal constitutional claim, Copley has failed to

explain or demonstrate that the state court of appeals' determination is contrary to or an

unreasonable application of clearly established federal law.

Accordingly, for the reasons explained herein, the undersigned recommends that the

Court DISMISS Ground Two as not cognizable on federal habeas review and/or DENY Ground

Two on the merits.

### E.  Ground Three and Ground Four

In Ground Three, Copley asserts: "I was denied my right to effective assistance of

counsel as guaranteed to me by the United States Constitution.  That denial prevented me from

having a fair due process and legal representation.  Doc. 1, p. 8.  In Ground Four, Copley

asserts: "I am being held in a state prison after being convicted of felony offenses only after I

was denied effective assistance of counsel and the right to due process."  Doc. 1, p. 9.  Since both

claims assert a denial of effective assistance of trial counsel, they are considered together.

Respondent argues that Ground Three and Ground Four are not sufficiently pled as

required by Rule 2(c) of the Rules Governing Section 2254 Proceedings, noting that Copley has

not identified in his Petition the alleged instances of ineffective assistance of counsel and has

provided no factual support for his alleged due process claim.  Doc. 11, pp. 22-23, 30.  Doc. 11,

p. 30.  Respondent argues that, even if the Court considers the alleged ineffective assistance of

counsel claim to be properly before this Court, the court of appeals considered the claim on the

merits and, with respect to at least one alleged instance of ineffective assistance of counsel,  i.e.,

that trial counsel was unaware of the import of the State's inability to find a witness to the crime,

Copley procedurally defaulted that claim by not appealing the court of appeals' denial of that

claim to Supreme Court of Ohio.  Doc. 11, pp. 23-24.  Respondent also argues that Copley waived some or all of his claims by pleading no-contest.  Doc. 11, pp. 28-29.

*Due Process*

The undersigned agrees that Copley did not fairly present a denial of due process claim to the state court or to this Court.  Nor has Copley argued or shown the necessary cause and prejudice for the failure to do so or that there is an available avenue for him to now present such a claim to the state courts.  Accordingly, to the extent Grounds Three and Four are premised on a denial of due process, the undersigned recommends that the Court DISMISS Grounds Three and Four as unexhausted and/or procedurally defaulted.

*Ineffective Assistance of Counsel*

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. Amend. VI.  In *Strickland v. Washington*, the Supreme Court set forth two requirements that must be shown in order to establish that an attorney was constitutionally ineffective.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."  *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

First, a petitioner must demonstrate "that counsel's performance was deficient."  "This requires showing that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  A petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id*. at 688.  "Judicial scrutiny of counsel's performance must be highly deferential [because] [i]t is all too tempting for a defendant to second-guess

counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* 689. Thus, in order to conduct a fair assessment of counsel's performance, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In light of "the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

"Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. "This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of guilty pleas, "[t]he second, or 'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59.

When considering and rejecting Copley' claims of alleged ineffective assistance of counsel, the state court of appeals explained:

{¶ 9} In his third assigned error, Copley argues that his trial counsel was ineffective for advising him to plea no contest because this subjected him to the possibility of receiving a fifty-year prison term. He maintains that his counsel was "not prepared to argue about the merger of allied offenses," and was unaware that the probation department could not find a witness to the crime. He also complains that counsel did not appear for the final hearing until ordered to do so.

{¶ 10} We review a claim of ineffective assistance of counsel under a two-part test that requires the defendant to demonstrate: (1) trial counsel's performance fell below an objective standard of reasonable representation; and (2) prejudice arose from the deficient performance. *State v. Bradley*, 42 Ohio St.3d 136, 141–143, 538 N.E.2d 373 (1989), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 11} In evaluating the alleged deficiencies in performance, our review is highly deferential to counsel's decisions as there is a strong presumption counsel's conduct fell within the wide range of reasonable professional assistance. *Bradley* at 142–143, 538 N.E.2d 373, citing *Strickland* at 689, 466 U.S. 668, 104 S.Ct. 2052. Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts are to refrain from second-guessing the strategic decisions of trial counsel. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). Debatable trial tactics generally do not constitute a deprivation of effective counsel. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 278.

{¶ 12} To show prejudice, a defendant must prove that the lawyer's deficiency was so serious that there is a reasonable probability the result of the proceeding would have been different. *Strickland* at 694, 466 U.S. 668, 104 S.Ct. 2052.

{¶ 13} With regard to the issue of Copley's potential exposure to a fifty-year sentence, the significant question is whether legally correct sentencing information was provided. *See State v. Ingram*, 8th Dist. Cuyahoga No. 89954, 2008-Ohio-3033, ¶ 18. Here, sentencing information was provided, and in any event, the potential fifty-year sentence was not imposed, as Copley received a significantly shorter term. Therefore, he cannot show prejudice from his claim about potential exposure to the fifty-year sentence from the no contest plea.

{¶ 14} As to the claim that counsel was not prepared to argue about the issue of merger, the record discloses that defendant's trial counsel flagged the issue of the merger of firearm specifications for the court's attention. The record also indicates that after speaking with defense counsel, the prosecuting attorney "agree[d] that Counts 2, 3 and 4 merge with Count 1 for purposes of sentencing." From the record, there is no basis upon which to conclude that defendant's trial counsel committed an error on this issue.

21

{¶ 15} With regard to the claim that defense counsel lacked information concerning the witness that the probation department could not locate, the record indicates defense counsel stated on the record that the employee could not be located. However, the state indicated that the employee had been served with a subpoena but was too fearful to appear for the hearing. Therefore, this issue was addressed below. In addition, the robbery was captured on video surveillance, and the assailants were chased by another employee after the crime. They were apprehended by police as they fled. Copley also confessed and apologized. Accordingly, there is no showing that Copley has been prejudiced by the witness's unavailability.

{¶ 16} As to defense counsel's late arrival to the hearing, we note that counsel's late arrival to a hearing is not ineffective assistance in the absence of prejudice. *See State v. Dixon*, 3rd Dist. Union No. 14–95–21, 1996 WL 16883, 1996 Ohio App. LEXIS 310 (Jan. 8, 1996). Here, the record demonstrates that defense counsel was in a domestic relations hearing at the time of the final hearing, and sent another attorney on his behalf. However, he appeared promptly when the court summoned him. Later in the hearing, he secured the 13–year sentence that was the aim of his strategy for the case. The record does not demonstrate prejudice from this issue.

{¶ 17} The third assigned error is without merit.

*Copley*, 2018-Ohio-1506, ¶¶ 9-17, 2018 WL 1882887, * 4; Doc. 11-1, pp. 106-109.

Where, as in this case, a state court of appeals has reached the merits of the ineffective-assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d).  *Perkins v. McKee*, 411 Fed. Appx. 822, 828 (6th Cir. 2011).  There is no de novo review of the evidence.  In *Harrington*, the Supreme Court emphasized the double layer of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA:

As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of

> equating unreasonableness under *Strickland* with unreasonableness under §
> 2254(d). When § 2254(d) applies, the question is not whether counsel's actions
> were reasonable. The question is whether there is any reasonable argument that
> counsel satisfied *Strickland's* deferential standard.

*Perkins*, 411 Fed. Appx. at 828 (quoting *Harrington,* 131 S.Ct. 770, 786-788).   In his Traverse,

Copley reiterates arguments made before the state courts and seeks a de novo review of his

ineffective assistance of counsel claims.  He does not explain or show how the Eighth District

Court of Appeals' determination under the *Strickland* standard "was so lacking in justification

that there was an error well understood and comprehended in existing law beyond any possibility

for fairminded disagreement."  *Id.*

Also, while Copley had second thoughts regarding his decision to plead no contest and

sought to withdraw his no-contest plea, he has not shown that, but for counsel's alleged errors,

he would not have pleaded no-contest and insisted on going to trial.  For example, at the hearing

on his motion to withdraw his plea, defense counsel relayed the circumstances surrounding

Copley's plea, including his assessment that, by pleading no contest, there was a possibility that

Copley could receive a shorter sentence than what was being offered by the prosecution.  Doc.

11-2, pp. 28-33; Doc. 11-2, p. 15, ¶ 7.  Copley stated he remembered his counsel telling him

what he relayed to the court.   Doc. 11-1, p. 31. The trial judge asked Copley why then, in his

motion to withdraw his plea, he said he was misled by his counsel and did not understand what

was going on with his no-contest plea.  Doc. 11-2, pp. 33-34.  In response, Copley stated that,

when he met with counsel on the day he pleaded no contest, he thought he was "just copping out

to a six to nine years."  Doc. 11-2, pp. 33-34.  The trial court reminded him that she had

reviewed with him the "the sentencing structure and the possibilities for sentence[] so that[]

[was] not true[]"; so he did know the sentencing structure and possibilities for sentence.  Doc.

11-2, p. 34.  The trial court thereafter denied the motion to withdraw.  Doc. 11-2, p. 34.

Copley's apparent reliance on *U.S. v. Cronic*, 466 U.S. 648 (1984) for the contention that federal habeas relief should be granted because there was a complete breakdown in the adversarial process and therefore prejudice should be presumed (Doc. 12, p. 12) is misplaced. He has not shown nor does the record support his claim that there was a complete breakdown of the adversarial process such that prejudice should be presumed.  For example, when addressing Copley's challenge to the denial of his motion to withdraw his no-contest plea, the court of appeals found:

> [Copley] complained that he believed that he would receive six-to-nine years of imprisonment. The court reiterated that all potential penalties were explained to Copley prior to the plea. The record also indicates that Copley acknowledged that no promises were made to him.
>
> ***
>
> The record demonstrates that Copley had very competent counsel, and was afforded a full Crim.R. 11 hearing before he entered the no contest plea. From the record, it is clear that Copley was given thorough information about the charges and penalties, and he stated that he understood. He also received a complete and impartial hearing on the motion to withdraw the plea, and the trial court gave full and fair consideration to the plea withdrawal request. The record also indicates that the case presented many challenges from a defense standpoint and that the state's best offer involved more prison time than Copley actually received. In our view, the record suggests that Copley was fearful about having pled to the entire indictment, and counsel's tactic of pleading no contest to the entire indictment, in hopes of obtaining a sentence that was more lenient than that offered by the state. Although we can appreciate the potential perils of this strategy, it was ultimately successful and was not unreasonable herein.

*Copley*, 2018-Ohio-1506, ¶¶ 19, 24, 2018 WL 1882887, * 4; Doc. 11-1, pp. 109, 111.

These and other state court of appeals' factual findings, which Copley has not rebutted by clear and convincing evidence, are presumed correct and they do not demonstrate a complete breakdown of the adversarial process.  Thus, the undersigned finds that Copley's reliance upon *Cronic* is misplaced.  Furthermore, as explained above, in order to be entitled to federal habeas relief where the state court has adjudicated a claim on the merits, as it did in this case, a

petitioner must show that that the court of appeals' determination was contrary to or an unreasonable application of clearly established federal law.  Copley has not made such a showing.

For the reasons, explained herein, even assuming arguendo that Copley has properly and fairly presented his ineffective assistance of counsel claim in Ground Three and/or Ground Four, not procedurally defaulted some or all of the alleged instances of alleged ineffective assistance of counsel, and/or not waived certain claims by virtue of his no-contest plea, the undersigned recommends that the Court DENY Grounds Three and Four that are premised on an alleged denial of effective assistance of trial counsel.

## IV. Recommendation

For the reasons stated above, the undersigned recommends that the Court DISMISS and/or DENY Copley's Petition (Doc. 1).  The Court should DISMISS Ground One; DISMISS and/or DENY Ground Two; and DISMISS and/or DENY Grounds Three and Four.

Dated: February 11, 2021

/s/ Kathleen B. Burke
Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).